## GRANT PAPER BOX CO. v. RUSSELL BOX CO.
### Civ. A. No. 1128.

United States District Court
D. Massachusetts.
July 11, 1952.

9, 1952, and upon the basis of the defendant's objections filed June 6, 1952, to the Master's report filed May 29, 1952.

The case was originally decided by Judge Healey in this Court and after an intermediate opinion, 1 Cir., 151 F.2d 886, the judgment entered by Judge Healey was reversed by the Circuit Court of Appeals pursuant to an opinion to be found in 1 Cir., 154 F.2d 729. On October 20, 1948, a decree was entered in this Court after mandate from the Circuit Court of Appeals. Thereafter this Court appointed and provided for the compensation of a Master, Robert L. Thompson, Esq. He held hearings from April 21, 1950 to August 29, 1951; received briefs from the parties up to September 24, 1951; and, as already indicated, filed his report in this Court six weeks ago. A hearing on the objections filed by both parties was held by this Court on July 8, 1952.

At the outset it is appropriate for this Court to express its appreciation of the generally excellent Master's report which admirably states the facts and the issues of law raised thereby.

It will be most convenient to deal first with the defendant's objections, all of which are hereby overruled.

1. In objection No. 1 defendant objects to the Master's finding that a fair deduction for waste is 2.6%. I am of the view that the Master's figure of 2.6% is soundly based on the available evidence.

2. In objection No. 2 defendant asserts that the computation of interest is incorrect because no deduction is made for the value of other patents and the trademark "Tredonia". The Master was warranted in finding (and I agree with him in his conclusion) that no deduction should be made for the value of other patents or the trade-mark. If defendant's point is that an award of compound interest cannot be justified under the circumstances of this case, the answer is that the allowance of interest is made discretionary by U.S.C.A. Title 35, § 70 and by the circumstances of this case. Collins v. Hupp Motor Car Corp., 6 Cir., 22 F.2d 27, 32. Indeed, since the Master could have calculated the royalty on a monthly rather than an annual basis,

William R. Hulbert, Hector M. Holmes, Fish, Richardson & Neave, Boston, Mass., for plaintiff. Wm. H. Parmelee, Christy Parmelee & Strickland, Pittsburgh, Pa., of counsel.

Herbert A. Baker, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This case comes before me upon the basis of the plaintiff's objections filed June

it would appear that the calculation of interest annually on a compound basis is more favorable than the defendant might have reasonably anticipated.

3. In objection No. 3 defendant pointed out that he did not have the benefit of a license under other patents and therefore should have a preferred rate of royalty. The Master was justified in ignoring the fact that other licensees secured licenses of other patents. Those other license arrangements provided that the royalty rate should be the same whether one or all of the patents were used; there is no showing that any patent other than the one now in litigation was ever used by any of those licensees; and there is no showing that other patents were necessary in order to use this patent. Compare Parker Rust Proof Co. v. Ford Motor Co., D.C.E.D. Mich. 1928, 23 F.2d 502, 505.

4. In objection No. 4 defendant objects to the finding of the Master that the trademark "Tredonia" was of no value to the licensees. I am satisfied that the Master was warranted in his conclusion.

5. In objection No. 5 defendant objects to the finding of the Master that price fixing is not in issue at this stage of the case. Taking into account the course of this litigation in this Court and in the appellate courts and the number of years that have elapsed since the defense of unclean hands was first asserted and the failure to offer at an earlier date evidence on this topic, I concur in the Master's ruling that he should not have taken evidence on points raised with respect to price fixing or unclean hands. The same reasons which lead me to concur with the Master's finding lead me to decline to take evidence myself on these issues at this stage of the case.

6. In objection No. 6 defendant objects to the Master's finding that there was no credible evidence that the plaintiff led the defendant to believe that the defendant was not infringing the patent by the use of the ordinary commercial wax. I concur with the Master's finding and overrule the objection.

7. In objection No. 7 defendant objects to the Master's finding that Judge Healey misconstrued the file wrapper. Defendant further objects to the Master's failure to find that plaintiff lost this or a parallel case originally before this Court, the Circuit Court of Appeals for the First Circuit (in its first opinion) and before the United States District Court for the Western District of Pennsylvania. In overruling this objection it is enough to note that, in their final views, two courts of appeals have held that under the circumstances of this case there is no file wrapper estoppel. Grant Paper Box Co. v. Russell Box Co., 1 Cir., 154 F.2d 729; Sutherland Paper Co. v. Grant, 3rd Cir., 183 F.2d 926.

8. In objection No. 8 defendant objects to the Master's finding that the defendant was careless in the contruction of the patent. I overrule this objection and heartily concur in the statement in the Master's report that the defendant's attitude "was due to carelessness in ascertaining the facts, carelessness in construing claim 3 or a combination of the two." [Page 18]

Turning now to the plaintiff's objections to the Master's report, I concur in so much of the first, second, third and fourth objection as attack the Master's conclusion that $3 per ton is an established royalty for the period from February 18, 1936 to July 1, 1940.

In the first part of this period, that is, from the date of issue of the patent to 1939, Grant Paper Box Company, the plaintiff, was competing with Russell and was paying the inventor a royalty of $8.30 per ton with a minimum yearly payment of $5,000. In this period Grant issued no licenses. Hence, for this period the calculation of damages to be paid by Russell should be a "reasonable royalty" and should be based upon $8.30 a ton with a minimum yearly payment of $5,000.

During the period from January 1, 1939 to July 1940 there were only two licenses issued by Grant. Those licenses issued after January 1, 1939 were so specialized in character as not to constitute an "established royalty." Cf. Rude v. Westcott, 130 U.S. 152, 165, 9 S.Ct. 463, 32 L.Ed. 888. However, the royalties fixed in those licenses (which were $5 for each ton of usable paper board laminated by the defendant with a reasonable yearly payment

of $5,000) were reasonable and should be used in calculating recoverable damages in this case.

In connection with the two earlier periods just referred to, as well as in connection with the period from July 1940 to December 1943 (during which the Master found and I agree that there was an established royalty of $3 for each ton of usable paper board laminated by the defendant with a minimum yearly payment of $1,000) compound interest should be added. Although in the first two periods the assessment of damages is not on the basis of an established royalty but on the basis of a reasonable royalty, there is in this case that type of "special circumstances" referred to in Duplate v. Triplex Safety Glass Co., 298 U.S. 448, 459, 56 S.Ct. 792, 80 L.Ed. 1274. Among those special circumstances are the facts that during the first period defendant was in competition with plaintiff (who, of course, was required to pay his $8.30 royalty promptly to the inventor) and during the second period defendant was in competition with plaintiff and two licensees who had to pay their royalties on a current basis without discount for prompt payment.

After the damages and interest have been calculated in accordance with the formulae above set forth the Court directs that a decree shall be entered for one and one half times the amount of the actual damages and interest so calculated together with what in every type of case are called "the costs" (not including counsel fees). The reasons why the Court increases the damages by 50% are not only the carelessness of the defendant already referred to but also the failure of the defendant to preserve its records and to cooperate to the usual extent in disclosing steps taken before and since the trial of this case began. These reasons also contribute to my determination to allow, in addition to the enhanced damages and costs already referred to, $30,000 for counsel fees. The itemization upon which this allowance is made is in part disclosed by the docket entries in this Court and the Court of Appeals and the Supreme Court of the United States. The allowance takes into account the capacity and diligence of counsel, their professional reputation, the difficulty of the tasks presented to them, and the manner in which they have performed the professional services they have undertaken.

Except to the extent plaintiff's objections and requests have been specifically sustained or granted in the foregoing parts of this opinion, they are overruled and denied.

Plaintiff to draw decree by July 18, 1952 and to submit copy thereof to defendant.